STATE OF NORTH CAROLINA v. MARCUS ARNELL CRAVEN

No. COA09-1138

(Filed 20 July 2010)

1. **Constitutional Law— right to confrontation—chemical analysis testimony**

    The trial court erred in a drugs case by admitting a special agent's testimony about the analyses conducted by other forensic analysts because the testimony violated defendant's state and federal constitutional rights to confrontation. Defendant's three convictions in 08 CRS 050529 were vacated.

2. **Drugs— keeping and maintaining vehicle for keeping and selling cocaine—motion to dismiss—sufficiency of evidence**

    The trial court did not err by denying defendant's motion to dismiss the felony charge of keeping and maintaining a vehicle for keeping and selling cocaine under N.C.G.S. § 90-108(a)(7) in 08 CRS 050532. In the light most favorable to the State, the testimony of two witnesses constituted substantial evidence which a

reasonable mind might accept as adequate to support the conclusion that defendant had possession of cocaine in his mother's car over a duration of time and/or on more than one occasion.

## 3. Sentencing— prior record level—consent to continuation of sentencing hearing

The trial court had jurisdiction to enter judgment in 06 CRS 50435 and did not err by counting this charge as part of defendant's prior record level when sentencing him for the 2008 charges. Defendant never requested sentencing and thus consented to continuation of his sentencing hearing until 13 March 2009. Had the trial court entered judgment at some earlier point for the 06 CRS 50435 conviction, it would still have been used to determine his prior record level.

Appeal by defendant from judgments entered 13 March 2009 by Judge Kenneth Titus in Chatham County Superior Court. Heard in the Court of Appeals 24 February 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Karen A. Blum, for the State.*

*Anne Bleyman for defendant.*

BRYANT, Judge.

On 7 August 2006, the Chatham County Grand Jury issued a two-count indictment charging defendant Marcus Arnell Craven with possession with intent to sell and deliver cocaine, and with sale and delivery of cocaine. In January 2007, defendant pled guilty to the charge of sale of cocaine in exchange for dismissal of the other charge. In this matter, 06 CRS 050435, the trial court entered a prayer for judgment continued until a subsequent term for purposes of sentencing.

Subsequently, on 6 October 2008, the Chatham County Grand Jury issued four multi-count indictments for: two counts of conspiracy to sell or deliver cocaine; three counts of knowingly and intentionally keeping and maintaining a vehicle for keeping and selling cocaine; two counts of selling and delivering cocaine; and single counts of manufacturing cocaine, possession with intent to manufacture, sell and deliver cocaine, and possession of drug paraphernalia. During the trial, the State dismissed two of the three charges of knowingly and intentionally keeping and maintaining a vehicle for

keeping and selling cocaine and the charge of the possession of drug paraphernalia; the jury found defendant guilty of all the remaining charges in 08 CRS 050528-9 and 08 CRS 050531-2. On 13 March 2009, the trial court entered judgment for 06 CRS 050435 and sentenced defendant to ten to twelve months; consolidated the 08 CRS 050528-9 convictions and sentenced defendant to thirteen to sixteen months; and consolidated the 08 CRS 050531-2 convictions and sentenced defendant to sixteen to twenty months. Each sentence was to be served in the custody of the Department of Correction and all were to run consecutively. Defendant appeals. As discussed below, we vacate in part and find no error in part.

*Facts*

The evidence tended to show the following. The charges against defendant resulted from the work of Sergeant Phillip Wayne Cook of the Chatham County Sheriff's Department and Daniel Ortiz Chuchra Zbytniuk, a paid informant for the Moore County Sheriff's Office. On 3 March 2008, Sergeant Cook and two other officers observed a crack cocaine buy set up between Zbytniuk and Christina Marie Smith, a known drug dealer. Defendant drove Smith in his mother's car to the convenience store in Goldston where the drug buy was to occur. When Zbytniuk gave Smith the money, she handed the cocaine to Zbytniuk and passed the money to defendant. On 6 March 2008, Zbytniuk called Smith to arrange another drug buy, and a man named "Mark" or "Marcus" answered the phone before passing it to Smith. The buy was set up for the same convenience store as before, and defendant again drove Smith in his mother's car. On 21 March 2008, Zbytniuk arranged to buy cocaine from defendant and to learn to process crack cocaine from Smith. Defendant drove Smith to the America's Best Motel in Siler City that evening to meet Zbytniuk. Defendant dropped Smith off and drove away to get Zbytniuk's cocaine. Smith and defendant later spoke on the phone and Smith instructed defendant to pick up baking soda and a cigar in a glass tube so they could cook the cocaine. Defendant brought these materials to the hotel room, along with part of the cocaine Zbytniuk had requested. Defendant then left to try to find more cocaine but was unable to do so. Smith then left the motel in defendant's car to get the cocaine, but the car broke down and she had to call Zbytniuk and defendant to come and pick her up. Officers stopped their vehicle and arrested defendant. At trial, State Bureau of Investigation Special Agent Kathleen Schell, a forensic chemist, testified that the substances purchased by Zbytniuk were cocaine. Special Agent Schell

reviewed the analyses conducted by two other forensic analysts who tested the substances purchased on 3 and 6 March 2008. Special Agent Schell conducted the analysis of the substance bought 21 March 2008 herself.

_____

Defendant made sixty-five assignments of error which he brings forward in four arguments to this Court: the trial court erred in (I) admitting Special Agent Schell's testimony about the analyses conducted by the other forensic analysts; (II) denying his motion to dismiss the charges against him in 08 CRS 050528-9 based on the drug buys from 3 March 2008 and 6 March 2008; (III) denying his motion to dismiss the charge against him in 08 CRS 050532 based in part on the drug buys from 3 March 2008 and 6 March 2008; and (IV) entering judgment for the 2006 offenses without jurisdiction and counting these offenses as part of defendant's prior record level for 2008 sentencing purposes. We vacate defendant's convictions in 08 CRS 050528-9 but find no error in his other judgments and convictions.

## *I* and *II*

[1] Defendant first argues that the trial court erred in admitting Special Agent Schell's testimony about the analyses conducted by the other forensic analysts because this testimony violated his state and federal constitutional rights to confrontation. We agree.

"The Confrontation Clause of the Sixth Amendment bars admission of testimonial evidence unless the declarant is unavailable to testify and the accused has had a prior opportunity to cross-examine the declarant." *State v. Locklear*, 363 N.C. 438, 452, 681 S.E.2d 293, 304 (2009) (citing *Crawford v. Washington*, 541 U.S. 36, 68, 158 L. Ed. 2d 177, 203 (2004) and *State v. Lewis*, 361 N.C. 541, 545, 648 S.E.2d 824, 827 (2007)). The United States Supreme Court has held that forensic analysts' affidavits certifying that a substance is cocaine are testimonial statements, and the analysts are "witnesses" under *Crawford* for purposes of the Sixth Amendment. *Melendez-Diaz v. Massachusetts*, — U.S. —, —, 174 L. Ed. 2d 314, 322 (2009). In a series of opinions from this Court over the past two years, we have applied the reasoning of *Melendez-Diaz* to other types of witnesses and testimony.

In *Locklear*, "the State sought to introduce evidence of forensic analyses performed by a forensic pathologist and a forensic dentist who did not testify." *Locklear*, 363 N.C. at 452, 681 S.E.2d at 305. An

expert witness testified to the contents of the analyses. *Id.* at 451, 681 S.E.2d at 304. The Court held the admission was error because "[t]he State failed to show that either witness was unavailable to testify or that defendant had been given a prior opportunity to cross-examine them." *Id.* at 452, 681 S.E.2d at 305. However, in *State v. Mobley*, this Court held that the testimony of a forensic analyst regarding DNA tests performed by other analysts did not violate the Confrontation Clause where the witness "testified not just to the results of other experts' tests, but to her own technical review of these tests, her own expert opinion of the accuracy of the non-testifying experts' tests, and her own expert opinion based on a comparison of the original data." —— N.C. App. ——, ——, 684 S.E.2d 508, 511 (2009), *disc. review denied*, 363 N.C. 809, S.E.2d (2010).

More recently, we have established a four part process to be used in "[a]pplying the rules articulated in *Melendez-Diaz* and *Locklear*" to a particular case:

> (1) determine whether the document at issue is testimonial; (2) if the document is testimonial, ascertain whether the declarant was unavailable at trial and defendant was given a prior opportunity to cross-examine the declarant; (3) if the defendant was not afforded the opportunity to cross-examine the unavailable declar-ant, decide whether the testifying expert was offering an inde-pendent opinion or merely summarizing another non-testifying expert's report or analysis; and (4) if the testifying expert sum-marized another non-testifying expert's report or analysis, deter-mine whether the admission of the document through another testifying expert is reversible error.

*State v. Brewington*, —— N.C. App. ——, ——, S.E.2d ——, —— (2010).

Here, the State contends Special Agent Schell testified not merely about the contents of the other analysts' reports, but also about her review of the underlying data and her own conclusions based there-upon. At trial, Special Agent Schell first explained how she and the other forensic chemists perform their work. The prosecutor and Special Agent Schell then engaged in the following exchange:

> Q. Now did you also bring with you notes and documentation for date of offense March 3, 2008?
>
> A. I did.
>
> Q. And who—who completed that analysis?

A. Mr. Tom Shoopman completed that analysis.

Q: And did you bring that file with you?

A: I did.

Q. And did you bring the notes supporting the underlying data?

A. I did.

Q. And did you bring the underlying data that supports the conclusion as to what was examined and the results of that examination?

A. I did.

The prosecutor then established the chain of custody for the report and asked:

Q. And did you bring [Mr. Shoopman's] report?

A. I did.

Q. Did you have a chance to review it?

A. I did.

Q. Do you agree with its conclusions?

A. I do.

Defendant objected, specifically noting that it was "a Constitutional confrontation clause objection." The trial court overruled the objection. An almost identical colloquy occurred regarding the substance obtained on 6 March 2008 which was analyzed by forensic chemist Irvin Allcox. Defendant again objected, and the trial court again overruled the objection. Special Agent Schell testified that she reviewed the data and analyses of both the other forensic chemists and agreed with their conclusions.

This testimony is strikingly similar to that which occurred in *Brewington*, which, like the case at bar, involved Special Agent Schell:

> Special Agent Schell testified extensively at trial about the testing procedures that are typically adhered to at the SBI lab. She testified regarding the manner in which tests are conducted in the regular course of business. However, the following exchange that occurred between Special Agent Schell and defense counsel on cross-examination is revealing:

Q. Okay. And it's true that you did not perform any of the tests on this evidence; is that correct?

A. It is. I did not perform these tests.

Q. So you didn't do any color test that came back negative—or the first test in this case you said didn't show any color change; is that right?

A. That's correct.

Q. So it didn't test—it didn't test positive on the first test. The second test you didn't observe any part of this evidence put in a liquid and turn blue.

A. I did not, but these are tests that are commonly performed in our section.

Q. Right. But my point is you didn't do this test so you don't know; you didn't see it turn blue for yourself.

A. I did not, no.

Q. Okay. And the crystal test, you didn't look through the slide that was where a part of the evidence was mixed with a liquid and showed cross crystals. You didn't actually see that, did you?

A. I did not, no.

Q. And the last test about the graph that had to be cleaned up, you didn't see this actual result being cleaned up or see the test performed, did you?

A. I did not see the test performed, but I have the data that Nancy Gregory obtained.

*Id.* at ——, —— S.E.2d at ——. We went on the state that:

It is clear from the testimony of Special Agent Schell that she had no part in conducting any testing of the substance, nor did she conduct any independent analysis of the *substance*. She merely reviewed the reported findings of Agent Gregory, and testified that if Agent Gregory followed procedures, and if Agent Gregory did not make any mistakes, and if Agent Gregory did not deliberately falsify or alter the findings, then Special Agent Schell "would have come to the same conclusion that she did." As the Supreme Court clearly established in *Melendez-Diaz*, it is precisely these "ifs" that need to be explored upon cross-

examination to test the reliability of the evidence. *Melendez-Diaz*, 557 U.S. at ——, 174 L. Ed. 2d at 327 (methodology that forensic drug analysts use "requires the exercise of judgment and presents a risk of error that might be explored on cross-examination"). Special Agent Schell could not have answered these questions because she conducted no independent analysis. She testified exclusively as to the tests that Agent Gregory claimed to have performed, and used testimonial documents not admissible under *Melendez-Diaz*. Her conclusion that she agreed with Agent Gregory's analysis assumes that Agent Gregory conducted the tests in the same manner that Special Agent Schell would have; however, the record shows that Special Agent Schell had no such actual knowledge of Agent Gregory's actions during the testing process.

*Id.* at ——, —— S.E.2d at ——; *see also State v. Brennan*, —— N.C. App. ——, ——, S.E.2d ——, —— (2010). We see no meaningful difference in the testimony Special Agent Schell gave in *Brewington* and in the case before us. Defendant's constitutional right to confront witnesses against him was violated by admission of the forensic analyses and Special Agent Schell's related testimony about the substances obtained on 3 and 6 March 2008.

Having determined that the trial court erred in admitting this evidence, we now consider whether admission of the analyses was harmless beyond a reasonable doubt. N.C. Gen. Stat. § 15A-1443(b) (2009) ("A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt.") The State bears the burden of proving harmless error beyond a reasonable doubt. *Id.* " 'Harmless beyond a reasonable doubt' has been interpreted to mean that 'there is no reasonable possibility' that the erroneous admission of evidence 'might have contributed to the conviction.' " *State v. Hooper*, 318 N.C. 680, 682, 351 S.E.2d 286, 288 (1987) (quoting *State v. Castor*, 285 N.C. 286, 292, 204 S.E.2d 848, 853 (1974)).

The erroneously admitted analyses and testimony related to the substances obtained on 3 and 6 March 2008. In 08 CRS 050528-9, defendant was convicted of and sentenced for three offenses which occurred on those dates: two counts of conspiracy to sell or deliver cocaine and one count of selling or delivering cocaine. "The offense of possession with intent to sell or deliver has the following three elements: (1) possession of a substance; (2) the substance must be a

controlled substance; (3) there must be intent to sell or distribute the controlled substance." *State v. Carr*, 145 N.C. App. 335, 341, 549 S.E.2d 897, 901 (2001) (citing N.C. Gen. Stat. § 90-95(a)(1)). The State contends that it presented lay opinion testimony that the substance was cocaine by way of Smith's testimony that she had used cocaine for twenty years and that the substances sold on 3 and 6 March 2008 were cocaine. The State contends this lay opinion testimony rendered the erroneous admission of the expert testimony harmless. We do not agree.

While this Court has held that testimony from a drug user that a substance she smoked was methamphetamine is admissible lay testimony under Rule 701, *State v. Yelton*, 175 N.C. App. 349, 353-54, 623 S.E.2d 594, 596-97 (2006), this does not suggest that a drug user's lay opinion has the same impact on a jury as expert scientific testimony admitted under Rule 702. To the contrary, we believe that scientific testing by an expert forensic analyst would be much more influential than lay opinion from an admitted drug user. We find additional support for this determination from our State's General Statutes and criminal procedure, as well of from our case law:

> By enacting such a technical, scientific definition of cocaine, it is clear that the General Assembly intended that expert testimony be required to establish that a substance is in fact a controlled substance. This is how drug cases have been handled and tried in the Superior Courts of this State for many years. Officers gather the evidence, carefully identify it with control numbers and submit it to a laboratory for chemical analysis. If the laboratory testing reveals the presence of a controlled substance, the prosecution of the defendant goes forward. If the laboratory testing reveals that no controlled substance is present, then the case is dismissed by the prosecutor.

> The General Assembly has further set forth procedures for the admissibility of such laboratory reports. *See* N.C. Gen. Stat. §§ 8-58.20, 90-95(g) and (g1). N.C. Gen. Stat. § 15A-903 provides that criminal defendants have broad pretrial access to discovery of materials obtained or prepared for the prosecution for use in its case in chief, including "not only conclusory laboratory reports, but also any tests performed or procedures utilized by chemists to reach such conclusions." *State v. Dunn*, 154 N.C. App. 1, 8, 571 S.E.2d 650, 655 (2002) (quotation and emphasis omitted). *This is due to "the extraordinarily high probative*

*value generally assigned by jurors to expert testimony . . ." Id.* at 6, 571 S.E.2d at 654 (quotation omitted).

*State v. Llamas-Hernandez,* 189 N.C. App. 640, 652-3, 659 S.E.2d 79, 86-7 (2008) (Steelman, J., dissenting), *reversed per curiam for the reasons stated in the dissent,* 363 N.C. 8, 673 S.E.2d 658 (2009) (emphasis added). Because we cannot say that " 'there is no reasonable possibility' that the erroneous admission of [the lab analyses and related expert testimony regarding the substances sold on 3 and 6 March 2008] 'might have contributed to the conviction[,]' " we cannot hold this error harmless. *Hooper,* 318 N.C. at 682, 351 S.E.2d at 288. Thus, we vacate defendant's three convictions in 08 CRS 050528-9. We need not address defendant's argument II that the trial court erred in denying his motion to dismiss the charges in 08 CRS 050529.

*III*

[2] Defendant next argues that the trial court erred in denying his motion to dismiss the felony charge of keeping and maintaining a vehicle for keeping and selling cocaine in 08 CRS 050532. We disagree.

This Court has held that

[u]pon review of a motion to dismiss, the court determines whether there is substantial evidence, viewed in the light most favorable to the State, of each essential element of the offense charged and of the defendant being the perpetrator of the offense. *State v. Stancil,* 146 N.C. App. 234, 244, 552 S.E.2d 212, 218 (2001), *aff'd as modified,* 355 N.C. 266, 559 S.E.2d 788 (2002) (per curiam); *State v. Compton,* 90 N.C. App. 101, 103, 367 S.E.2d 353, 355 (1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franklin,* 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990).

*State v. Lane,* 163 N.C. App. 495, 499, 594 S.E.2d 107, 110 (2004).

Under N.C. Gen. Stat. § 90-108(a)(7), it is illegal to "knowingly keep or maintain any . . . vehicle . . . which is used for the keeping or selling of [controlled substances]." N.C.G.S. § 90-108(a)(7) (2009).

The statute thus prohibits the keeping or maintaining of a vehicle only when it is used for "keeping or selling" controlled substances. As stated by our Supreme Court in *State v. Mitchell,* the word " 'keep' . . . denotes not just possession, but possession that

occurs over a duration of time." Thus, the fact "that an individual within a vehicle possesses marijuana on one occasion cannot establish . . . the vehicle is 'used for keeping' marijuana; nor can one marijuana cigarette found within the car establish that element." Likewise, the fact that a defendant was in his vehicle on one occasion when he sold a controlled substance does not by itself demonstrate the vehicle was kept or maintained to sell a controlled substance.

*State v. Dickerson,* 152 N.C. App. 714, 716, 568 S.E.2d 281, 282 (2002) (quoting *State v. Mitchell,* 336 N.C. 22, 32-33, 442 S.E.2d 24, 30 (1994)) (alteration in original)). In *Lane,* the evidence showed that police officers recovered cocaine from a car which the defendant had been driving. 163 N.C. App. at 498, 594 S.E.2d at 109-10. Because the evidence did "not indicate possession of cocaine in the vehicle that occurred over a duration of time, nor [was] there evidence that defendant had used the vehicle on a prior occasion to sell cocaine. . . . [we] agree[d] with defendant that his motion to dismiss should have been granted." *Id.* at 500, 594 S.E.2d at 111.

Here, as discussed above, without the erroneously admitted analyses and related testimony, there was no expert testimony or documentary evidence that defendant possessed cocaine in his mother's car on 3 or 6 March 2008. However, Smith's testimony that she and defendant had transported cocaine "eightballs" sold to Zbytniuk on 3 and 6 March 2008 in defendant's mother's car was admissible lay testimony under Rule 701. *Yelton,* 175 N.C. App. at 354, 623 S.E.2d at 597; N.C. Gen. Stat. § 8C-1, N.C.R. Evid. 701 (2009) (permitting lay opinion testimony when it is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."). Special Agent Schell gave expert testimony that the substance defendant possessed on 21 March 2008 was cocaine. In the light most favorable to the State, the testimony of Smith and Special Agent Schell constituted substantial evidence which a reasonable mind might accept as adequate to support a conclusion that defendant had possession of cocaine in his mother's car over a duration of time and/or on more than one occasion. *Lane,* 163 N.C. App. at 499, 594 S.E.2d at 111. This assignment of error is overruled.

### IV

**[3]** Defendant also argues that the trial court lacked jurisdiction to enter judgment in 06 CRS 50435 and erred in counting this charge as

part of his prior record level in sentencing him for the 2008 charges. We disagree.

This Court has summed up our State's law on prayers for judgment continued as follows:

> [t]he sentence of a criminal defendant "does not necessarily have to be imposed at the same term of court at which the verdict or plea of guilty was had." *State v. Graham*, 225 N.C. 217, 219, 34 S.E.2d 146, 147 (1945); *see also Miller v. Aderhold*, 288 U.S. 206, 211, 77 L. Ed. 702, 705-06 (1933) ("where verdict has been duly returned, the jurisdiction of the trial court . . . is not exhausted until sentence is pronounced, either at the same or succeeding term"). A trial court is authorized to continue the case to a subsequent date for sentencing. *Graham*, 225 N.C. at 219, 34 S.E.2d at 147; *Miller*, 288 U.S. at 211, 77 L. Ed. at 705-06. This continuance is frequently referred to as a "prayer for judgment continued." A continuance of this type vests a trial judge presiding at a subsequent session of court with the jurisdiction to sentence a defendant for crimes previously adjudicated. This procedure of delaying the imposition of judgment in criminal cases is recognized by our legislature, see N.C.G.S. § 15A-1334(a) (1988) (allowing "continuance of the sentencing hearing"); N.C.G.S. § 15A-1416(b)(1) (1988) (allowing state to move for imposition of sentence when prayer for judgment has been continued), and is an exception to the general rule that the court's jurisdiction expires with the expiration of the session of court in which the matter is adjudicated. *See State v. Boone*, 310 N.C. 284, 287, 311 S.E.2d 552, 555 (1984). The continuance may be for a definite or indefinite period of time, but in any event the sentence must be entered "within a reasonable time" after the conviction or plea of guilty. 21 Am. Jur. 2d Criminal Law § 526, at 870 (1981) (unreasonable delay can deprive trial court of jurisdiction). If not so entered, the trial court loses jurisdiction. *Id*. Thus, although pursuant to N.C.G.S. § 15A-1416(b)(1), the State may "[a]t any time after verdict" move for the imposition of sentence when prayer for judgment has been continued and grounds for the imposition of sentence are asserted, the State's failure to do so within a reasonable time divests the trial court of jurisdiction to grant the motion. Deciding whether sentence has been entered within a "reasonable time" requires consideration of the reason for the delay, the length of the delay, whether defendant has consented to the delay, and any actual prejudice to defendant which results from the delay. 21 Am. Jur. 2d Criminal Law § 561, at 924 (1981).

*State v. Degree*, 110 N.C. App. 638, 640-41, 430 S.E.2d 491, 493 (1993). A defendant's failure to request sentencing "is tantamount to his consent to a continuation of the sentencing hearing." *Id.* at 641-42, 430 S.E.2d at 493.

Here, defendant was indicted in 06 CRS 50435 on 7 August 2006 and the trial court accepted defendant's guilty plea on 22 January 2007. Judgment was continued from term to term. Thereafter, defendant never requested sentencing and, thus, consented to continuation of his sentencing hearing until 13 March 2009. *Id.* The two-year delay in and of itself is not unreasonable. *See State v. Lea*, 156 N.C. App. 178, 180, 576 S.E.2d 131, 133 (2003) (finding no error when judgment and sentence were entered more than five years after the defendant was convicted). Defendant contends he was prejudiced by the delayed entry of the judgment because the 06 CRS 50435 conviction was used to determine his prior record level for sentencing on the 2008 convictions. We disagree; had the trial court entered judgment at some earlier point for the 06 CRS 50435 conviction, that conviction would still have been used to determine his prior record level. This assignment of error is overruled.

### Conclusion

We vacate defendant's convictions in 08 CRS 050528-9. We find no error in defendant's convictions in 08 CRS 050531-2 and 06 CRS 50435. In addition, we remand for resentencing not inconsistent with this opinion.

Vacated in part and no error in part; remanded.

Judges STEELMAN and BEASLEY concur.