IN THE SUPREME COURT OF NORTH CAROLINA

No. 322PA10

FILED 27 JUNE 2013

STATE OF NORTH CAROLINA

v.

MARCUS ARNELL CRAVEN

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 205 N.C. App. 393, 696 S.E.2d 750 (2010), vacating in part and finding no error in part in judgments entered on 13 March 2009 by Judge Kenneth Titus in Superior Court, Chatham County, and remanding for resentencing. Heard in the Supreme Court on 13 February 2013.

*Roy Cooper, Attorney General, by Daniel P. O'Brien, Assistant Attorney General, for the State-appellant.*

*Anne Bleyman for defendant-appellee.*

*Law Offices of John R. Mills NPC, by John R. Mills; and Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse, for North Carolina Advocates for Justice, amicus curiae.*

JACKSON, Justice.

In this appeal we consider whether the admission of lab reports through the testimony of a substitute analyst violated defendant's Sixth Amendment right to confront the witnesses against him. Because the testifying analyst did not give her own independent opinion, but rather gave "surrogate testimony" reciting the testing analysts' opinions, we affirm the decision of the Court of Appeals holding that there was a Confrontation Clause violation. *See Bullcoming v. New Mexico*, ___ U.S. ___,

___, 131 S. Ct. 2705, 2716 (2011). Defendant is entitled to a new trial for the sale or delivery charge arising from the offense date of 6 March 2008. However, because the conspiracy convictions were not affected by the erroneous admission of the substitute analyst's testimony, we reverse the decision of the Court of Appeals vacating those convictions and reinstate defendant's conspiracy convictions arising from the offense dates of 3 March and 6 March 2008.

The State's evidence at trial tended to show the following: On 3 March 2008, officers of the Chatham County Sheriff's Department observed a controlled drug buy between undercover informant Daniel Zbytniuk and Christina Marie Smith. Defendant drove Smith in his mother's car to the buy location. Smith testified that she received crack cocaine from defendant, took a small portion of it for herself as payment for making the handoff, and then gave Zbytniuk the remainder of the substance in exchange for money. Smith then handed the money to defendant. On 6 March 2008, officers observed another buy arranged between Zbytniuk and Smith. Similar to the 3 March 2008 buy, defendant drove Smith in his mother's car, Smith gave a substance she testified to be crack cocaine to Zbytniuk in exchange for money, and Smith handed the money to defendant. On 21 March 2008, a third buy was arranged between Zbytniuk and Smith, this time for a larger amount and at a motel so that Zbytniuk could learn how to process crack cocaine. Officers set up surveillance in another room across the parking lot. Defendant dropped Smith off at the motel and left to get Zbytniuk's cocaine. Defendant later returned to the

motel with cocaine, which he gave to Zbytniuk in exchange for money. Defendant also brought baking soda and a cigar in a glass tube, which Smith used to show Zbytniuk how to cook powder cocaine into crack cocaine. Defendant left to try to find more cocaine, but was unable to do so. Smith then left in defendant's mother's car to purchase cocaine, but the car broke down and she had to call Zbytniuk and defendant to come pick her up. Officers arrested defendant as the pair were on their way to pick up Smith.

On 6 October 2008, defendant was indicted in Chatham County for: (1) conspiracy to sell or deliver cocaine and maintaining a place for the keeping of controlled substances on 3 March 2008; (2) conspiracy to sell or deliver cocaine, maintaining a place for the keeping of controlled substances, and sale or delivery of cocaine on 6 March 2008; and (3) manufacturing cocaine, possession with intent to manufacture, sell, or deliver cocaine, sale or delivery of cocaine, maintaining a place for the keeping of controlled substances, and possession of drug paraphernalia on 21 March 2008. The State dismissed the charges of maintaining a place for the keeping of controlled substances on 3 March and 6 March 2008 and the charge of possession of drug paraphernalia on 21 March 2008.

At trial the State introduced Special Agent Kathleen Schell of the State Bureau of Investigation as an expert in forensic chemistry. Agent Schell testified about the identity, composition, and weight of the substances recovered on each of

the three buy dates. She personally had tested the sample from 21 March 2008. However, Agents Tom Shoopman and Irvin Allcox had performed the testing on the samples from 3 March and 6 March 2008. Defense counsel objected on Sixth Amendment grounds, arguing that Agent Schell's testimony and admission of the relevant lab reports violated defendant's right to confront the witnesses against him. The trial court overruled defense counsel's objection.

Defendant was convicted of multiple counts and sentenced to consecutive terms of: (1) thirteen to sixteen months for the consolidated offenses of two counts of conspiracy to sell or deliver cocaine on 3 March and 6 March 2008 and one count of sale or delivery of cocaine on 6 March 2008; and (2) sixteen to twenty months for the consolidated offenses of sale or delivery of cocaine, manufacturing cocaine, possession with intent to manufacture, sell or deliver cocaine, and maintaining a place for the keeping of controlled substances, all on 21 March 2008. Defendant appealed to the Court of Appeals, which vacated the convictions for two counts of conspiracy to sell or deliver cocaine on 3 March and 6 March 2008 and one count of sale or delivery of cocaine on 6 March 2008. *State v. Craven*, 205 N.C. App. 393, 405, 696 S.E.2d 750, 757 (2010). The Court of Appeals found no error in the convictions stemming from the events on 21 March 2008. *Id.* The State filed a Petition for Discretionary Review with this Court, seeking review of the decision vacating the 3 March and 6 March 2008 convictions.

In *State v. Ortiz-Zape*, ___ N.C. ___, ___ S.E.2d ___ (2013) (329PA11), we summarized the Supreme Court of the United States' Confrontation Clause jurisprudence in deciding whether a defendant's Confrontation Clause rights were violated when an expert witness gave her opinion that a substance was cocaine, based upon testing performed by a non-testifying chemical analyst.  There we held that "admission of an expert's independent opinion based on otherwise inadmissible facts or data 'of a type reasonably relied upon by experts in the particular field' does not violate the Confrontation Clause so long as the defendant has the opportunity to cross-examine the expert." *Ortiz-Zape*, ___ N.C. at ___, ___ S.E.2d at ___, slip op. at 13 (June 26, 2013) (quoting N.C.G.S. § 8C-1, Rule 703 (2011)).  "We emphasize[d] that the expert must present an independent opinion obtained through his or her own analysis and not merely 'surrogate testimony' parroting otherwise inadmissible statements."  *Id.*, slip op. at 13 (quoting *Bullcoming*, ___ U.S. at ___, 131 S. Ct. at 2710).  Accordingly, we must determine whether the testimony objected to here was an independent opinion obtained through Agent Schell's own analysis or was merely surrogate testimony repeating testimonial out-of-court statements.[1]  *See id.*, slip op. at 15 (discussing preservation of error).

---

[1] Consistent with the approach adopted by the majority in *Ortiz-Zape*, we decline to adopt the concurrence's four-part test for determining whether there is a Confrontation Clause violation.

Here, defense counsel objected to portions of Agent Schell's testimony about the substances recovered from the 3 March and 6 March 2008 buys. Regarding the 3 March 2008 sample, the State asked:

> Q.   Now did you also bring with you notes and documentation for the date of offense March 3, 2008?
>
> A.   I did.
>
> Q.   And who—who completed that analysis?
>
> A.   Mr. Tom Shoopman completed that analysis.
>
> . . . .
>
> Q.   And did you bring his report?
>
> A.   I did.
>
> Q.   Did you have a chance to review it?
>
> A.   I have.
>
> Q.   Do you agree with its conclusions?
>
> A.   I do.
>
> . . . .
>
> Q.   *What was Mr. Shoopman's conclusion?*
>
> [Objection by defense counsel]
>
> . . . .
>
> A.   According to the lab report prepared by Tom Shoopman, the results for State's Exhibit Number . . . . 10 were cocaine base schedule two controlled substance with a weight of 1.4 grams.

The lab report then was admitted into evidence.

Similarly, regarding the 6 March 2008 sample, the State asked:

> Q.      Now turning to State's Exhibit Number 12 and offense date March 6th of 2008, did you bring a report from the SBI regarding that date of offense?
>
> A.      I did.
>
> Q.      Who conducted that analysis?
>
> A.      Mr. Irvin Allcox.
>
> Q.      And do you have that report in your hand?
>
> A.      I do.
>
> Q.      And do you have the underlying data supporting that conclusion?
>
> A.      I do.
>
> Q.      And you do agree with the conclusion stated in that report?
>
> A.      I do.
>
> . . . .
>
> Q.      *And what conclusion did [Mr. Allcox] reach?*
>
> [Objection by defense counsel]
>
> A.      The item . . . .  twelve was cocaine base, schedule two controlled substance.  And it had a weight of 2.5 grams.

That lab report also was admitted into evidence.

It is clear from this testimony that Agent Schell did not offer—or even purport to offer—her own independent analysis or opinion on the 3 March and 6 March 2008 samples. Instead, Agent Schell merely parroted Agent Shoopman's and Agent Allcox's conclusions from their lab reports. Like the lab report in *Bullcoming*, these lab reports contained "[a]n analyst's certification prepared in connection with a criminal investigation or prosecution." *Bullcoming*, ___ U.S. at ___, 131 S. Ct. at 2713-14. Specifically, Agent Shoopman's and Agent Allcox's certifications stated: "This report represents a true and accurate result of my analysis on the item(s) described." There is no doubt that the lab reports were "document[s] created solely for an 'evidentiary purpose,' . . . made in aid of a police investigation, [and] rank[ ] as testimonial." *Id.* at ___, 131 S. Ct. at 2717 (quoting and citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311, 129 S. Ct. 2527, 2532 (2009)). Thus, the statements introduced by Agent Schell constituted testimonial hearsay, triggering the protections of the Confrontation Clause. "Absent a showing that [Agents Shoopman and Allcox] were unavailable to testify at trial *and* that [defendant] had a prior opportunity to cross-examine them, [defendant] was entitled to ' "be confronted with" ' the [agents] at trial." *Melendez-Diaz*, 557 U.S. at 311, 129 S. Ct. at 2532 (quoting *Crawford v. Washington*, 541 U.S. 36, 54, 124 S. Ct. 1354, 1365 (2004)); *see also Bullcoming*, ___ U.S. at ___, 131 S. Ct. at 2710. Here the State did not show that Agents Shoopman and Allcox were unavailable and that defendant had a prior opportunity to cross-examine them. Accordingly, admission of Agent

Shoopman's and Agent Allcox's testimonial conclusions through Agent Schell's surrogate testimony violated defendant's Sixth Amendment right to confrontation. *See Bullcoming*, ___ U.S. at ___, 131 S. Ct. at 2710.

Having determined that admission of the out-of-court testimonial statements from the 3 March and 6 March 2008 lab reports was error, we now must determine whether that error was harmless beyond a reasonable doubt. *See* N.C.G.S. § 15A-1443(b) (2011).

With regard to the convictions for conspiracy to sell or deliver cocaine on 3 March and 6 March 2008, we reverse the decision of the Court of Appeals vacating those convictions. "A criminal conspiracy is an agreement between two or more people to do an unlawful act." *State v. Morgan*, 329 N.C. 654, 658, 406 S.E.2d 833, 835 (1991). It is not necessary for the unlawful act to be completed. *Id.* "As soon as the union of wills for the unlawful purpose is perfected, the offense of conspiracy is completed." *Id.* Agent Schell's testimony regarding the substances obtained on 3 March and 6 March 2008 was not necessary for the State to prove beyond a reasonable doubt that defendant conspired to sell or deliver cocaine. Therefore, the erroneous admission of such testimony was harmless as to defendant's convictions for conspiracy to sell or deliver cocaine on 3 March and 6 March 2008. Accordingly, we instruct the Court of Appeals to reinstate these convictions.

With regard to the remaining conviction for sale or delivery of cocaine on 6 March 2008, the six participating members of the Court are equally divided on whether the error was harmless beyond a reasonable doubt. Consequently, the decision of the Court of Appeals, which held the error was reversible, remains undisturbed and stands without precedential value. *See, e.g.*, *Goldston v. State*, 364 N.C. 416, 700 S.E.2d 223 (2010) (per curiam).

Nevertheless, the remedy ordered by the Court of Appeals was erroneous as a matter of law. Instead of vacating defendant's conviction for sale or delivery of cocaine, the Court of Appeals should have ordered a new trial. *See, e.g.*, *State v. Littlejohn*, 264 N.C. 571, 574, 142 S.E.2d 132, 134-35 (1965) (concluding that the defendants were entitled to a new trial, not dismissal of the charges against them, because the trial court, in denying their motion for nonsuit, acted upon incompetent evidence). Therefore, we reverse the Court of Appeals' opinion with respect to the remedy and order a new trial on the sale or delivery conviction dated 6 March 2008. The decision of the Court of Appeals regarding defendant's remaining convictions remains undisturbed.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Justice BEASLEY did not participate in the consideration or decision of this case.

Justice HUDSON concurring in the result.


Though the majority here reaches the correct result, it does so by relying on *State v. Ortiz-Zape*, ___ N.C. ___, ___ S.E.2d ___ (2013) (329PA11), and by utilizing an approach which in my view is unnecessarily broad and confusing.  I conclude that in this slice of cases—in which certified lab reports prepared for this prosecution are entered into evidence through a surrogate witness who was not involved in the testing—the approach can be quite simple.  As such, I write separately to set out that approach as dictated by the United States Supreme Court in *Melendez-Diaz* and *Bullcoming*.  Therefore, I respectfully concur in the result.

Because I have summarized the development of the Supreme Court's recent Sixth Amendment Confrontation Clause jurisprudence in the dissenting opinion in *Ortiz-Zape*, I will not do so again here.  *See Ortiz-Zape*, ___ N.C. at ___, ___ S.E.2d at ___ (Hudson, J., dissenting).  But because the majority's opinion does not offer the necessary discussion of the confrontation issues in this case but instead turns on whether the testimony fits under the umbrella of "independent opinion" the majority has constructed in *Ortiz-Zape*, I cannot agree with its reasoning here.  I will endeavor to fill in the missing pieces of the analysis and offer a methodical approach that is simple to apply to future cases within this easily definable category.

Though the majority does not clearly explain this, two separate Confrontation Clause violations arise here:  first, the admission of the lab reports without accompanying testimony by the analyst who prepared them; and second, admission

of Agent Schell's testimony based entirely on her review of the lab reports. While the two are closely connected in this case, they require separate analyses for future cases that may involve one or the other.

First, we examine the admission of the lab reports themselves for constitutional error. "As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness." *Bullcoming v. New Mexico*, ___ U.S. ___, ___, 131 S. Ct. 2705, 2713 (2011). There is no question that the lab reports are out-of-court statements and that the witnesses (Tom Shoopman and Irvin Allcox) who made those statements did not testify. In addition, the State made no showing that those witnesses were unavailable or that defendant had a prior opportunity to cross-examine them. The only question remaining from the *Bullcoming* rule quoted above, then, is whether the lab reports are "testimonial in nature." *Id.* at ___, 131 S. Ct. at 2713. Applying the analysis from *Melendez-Diaz* and *Bullcoming*, I conclude that the reports are undoubtedly testimonial and were prepared solely for the prosecution of this defendant.[2] As such, the testing analysts are witnesses

---

[2] Although *Williams v. Illinois* does not control here because it involved a report not prepared for that particular prosecution, the four-member plurality's opinion noted what distinguished that case from *Bullcoming* and *Melendez-Diaz*: "In those cases, the forensic reports were introduced into evidence, and there is no question that this was done for the purpose of proving the truth of what they asserted: in *Bullcoming* that the defendant's blood alcohol level exceeded the legal limit and in *Melendez–Diaz* that the substance in question contained cocaine. Nothing comparable happened here." *Williams v. Illinois*, ___

against defendant whom he is entitled to confront under the Sixth Amendment.

In *Melendez-Diaz v. Massachusetts* the Supreme Court opined that "certificates" of lab analysts were affidavits and therefore, testimonial. 557 U.S. 305, 310, 129 S. Ct. 2527, 2532 (2009). Further, the Court found that the certificates were "incontrovertibly a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* (citations and internal quotation marks omitted). In *Bullcoming* the Supreme Court refused to distinguish between the "sworn" certificates in *Melendez-Diaz* and the "unsworn" lab reports in that case. Instead, the Court noted that "[i]n all material respects, the laboratory report in this case resembles those in *Melendez–Diaz.*" *Bullcoming*, ___ U.S. at ___, 131 S. Ct. at 2717. The Court went on to conclude that the lab reports were testimonial, stating that "[a] document created solely for an 'evidentiary purpose,' . . . made in aid of a police investigation, ranks as testimonial." *Id.* at ___, 131 S. Ct. at 2717 (citing *Melendez-Diaz*, 557 U.S. at 310-11, 129 S. Ct. at 2532). The same analysis applies here: the lab reports were created solely for the evidentiary purpose of establishing or proving that the substances in question were in fact cocaine in the State's case against this defendant. The forms at issue state near the bottom, in all capitals, that "THIS REPORT IS TO BE USED ONLY IN CONNECTION WITH AN OFFICIAL CRIMINAL INVESTIGATION." Directly under that statement is the printed attestation that: "This report represents a true and accurate result of

---

U.S. ___, ___, 132 S. Ct. 2221, 2240 (2012) (plurality).

my analysis on the item(s) described," followed by a signature. State's Exhibit 29, the analysis of State's Exhibit 10 (from the 3 March 2008 buy) is signed by "T.E. Shoopman"; State's Exhibit 30, the analysis of State's Exhibit 12 (from the 6 March 2008 buy) is signed by "Irvin Lee Allcox."

There can be no question that these lab reports are testimonial in nature. Because both reports were offered and received into evidence through Agent Schell's testimony without any limitation on purpose, over defendant's objection based on the Confrontation Clause, their admission into evidence without testimony from the testing analysts was a clear violation of the Confrontation Clause under *Bullcoming*.[3] This error allowed admission of the essential evidence of a central element of the charge of sale or delivery of cocaine, namely, that the substance was cocaine. As such, the error cannot be considered harmless beyond a reasonable doubt unless there was other, independent evidence to establish the same crucial fact.

Second, then, we must examine Agent Schell's testimony regarding her review of the lab reports. The decision in *Bullcoming* leaves room for an expert who did not conduct the testing in question to offer an "independent opinion" on the fact at issue. *See* ___ U.S. at ___, 131 S. Ct. at 2716 (noting that the State did not

---

[3] State law provides that the State may properly introduce the report without the testimony of the original testing analyst if the State gives written notice to the defendant that it intends to do so and the defendant does not object in a timely fashion. N.C.G.S. § 90-95(g) (2012). The Supreme Court has endorsed such statutory waiver of confrontation rights in this context. *See Melendez-Diaz*, 557 U.S. at 326-27, 129 S. Ct. at 2540-41. The State did not make use of subsection 90-95(g) here.

"assert that [the substitute expert] had any 'independent opinion' concerning Bullcoming's [blood alcohol content]"). Justice Sotomayor emphasized that very point in her concurrence. *Id.* at ___, 131 S. Ct. 2722 (Sotomayor, J., concurring) (stating that "this is not a case in which an expert witness was asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence"). Despite the erroneous admission of the lab reports here, the State's case could perhaps have been salvaged if Agent Schell had presented such an independent expert opinion regarding the identity of the chemical substance. She did not.

When considering whether admission of an expert witness's opinion based on underlying lab reports is constitutionally permissible, I apply a methodical approach. This analysis is discussed at length in the dissenting opinion in *Ortiz-Zape*, ___ N.C. at ___, ___ S.E.2d at ___ (Hudson, J., dissenting), so I will abbreviate it here. First, we consider whether the underlying lab reports are testimonial—if they are not, there is no Confrontation Clause violation. Second, we examine the identity of the witness testifying based on the reports—if the original testing analyst does not appear as a witness, and the State does not show that she was unavailable and that defendant had a prior opportunity to cross-examine her, neither the report itself nor the report's conclusions can be admitted as evidence.

Third, we consider whether the testifying analyst has offered an independent opinion based on something other than her review of the reports. When the State

offers an expert witness ostensibly testifying to an independent opinion based on review of inadmissible testimonial lab reports, we must carefully examine the testimony of the expert to determine whether she offers a truly independent expert opinion or merely acts as the surrogate analyst forbidden by *Bullcoming*.

The majority held in *Ortiz-Zape* that "admission of an expert's independent opinion based on otherwise inadmissible facts or data 'of a type reasonably relied upon by experts in the particular field' does not violate the Confrontation Clause so long as the defendant has the opportunity to cross-examine the expert." *Ortiz-Zape*, ___ N.C. at ___, ___ S.E.2d at ___ (majority opinion) (quoting N.C.G.S. § 8C-1, Rule 703 (2011)). The majority then "emphasize[d] that the expert must present an independent opinion obtained through his or her own analysis and not merely 'surrogate testimony' parroting otherwise inadmissible statements." *Id.* at ___, ___ S.E.2d ___ (citation omitted). The rule from *Ortiz-Zape* is incomplete at best, because it takes no account of the purpose for which the report was prepared and whether it is offered for its truth. *See Williams v. Illinois*, ___ U.S. ___, ___, ___, 132 S. Ct. 2221, 2235, 2243 (2012) (plurality). And even if the statements from *Ortiz-Zape* appear reasonable, in reality the majority has created a rule under which the State can circumvent the Confrontation Clause simply by asking the testifying analyst the question: "What is your independent expert opinion?" *See Ortiz-Zape*, ___ N.C. at ___, ___ S.E.2d at ___ (finding no confrontation problem when expert witness reported no independent analysis or knowledge beyond that presented in

the inadmissible report, but was asked: "What is your independent expert opinion?"); *State v. Brewington*, ___ N.C. ___, ___, ___ S.E.2d ___, ___ (2013) (235PA10) (finding no confrontation problem when expert witness testified that "[b]ased upon all the data that [Agent Gregory] obtained from the analysis of that particular item . . . I would have come to the same conclusion that she did"). The majority's rule, as applied in *Ortiz-Zape* and *Brewington*, does not actually require any independent analysis or work on the expert's part. The expert may simply review the nontestifying analyst's report and adopt its conclusions as her own. That rule is flatly inconsistent with United States Supreme Court precedent on this issue. I would instead insist that the expert have actually done independent analysis—either by doing his or her own analysis of raw data obtained by the nontestifying analyst or (preferably) retesting the substance and reporting his or her own results. Otherwise, the Sixth Amendment gives defendant the right to confront the testing analyst by cross-examination.

The final step in the analysis is to determine whether any preserved constitutional error is harmless beyond a reasonable doubt. The State bears the burden of making this showing, which generally requires that "overwhelming" evidence of guilt remain after removal of the constitutionally problematic evidence. *See State v. Autry*, 321 N.C. 392, 400, 364 S.E.2d 341, 346 (1988).

I now apply that analytical framework here. As discussed above, there is no question that the lab reports were created solely to be used as evidence in this

prosecution and are therefore testimonial. Further, the original testifying analysts did not testify and the State made no effort to show that they were unavailable or subject to prior cross-examination. Because Agent Schell testified based on Agent Shoopman's and Agent Allcox's analyses and reports, we examine whether she has offered a truly independent opinion or has merely agreed with the nontestifying analysts' conclusions, which are testimonial opinions on a key element of the case against defendant. The latter violates the Confrontation Clause. *See Bullcoming*, ___ U.S. at ___, 131 S. Ct. at 2716.

The testimony quoted by the majority speaks for itself: Agent Schell testified specifically to the conclusions of two nontestifying analysts and offered no independent analysis or opinion at all. The only opinion she was asked to give was: "Do you agree with the conclusion stated in that report?" There is nothing independent about agreeing with a conclusion in an inadmissible report. This testimony is functionally indistinguishable from the testimony prohibited in *Bullcoming*, in that it deprives defendant of any meaningful cross-examination regarding either agent's testing procedures. Because Agent Schell did not observe the testing by Agent Shoopman or Agent Allcox, like the surrogate analyst in *Bullcoming*, she could not be cross-examined about "what [either analyst] knew or observed about the events [their reports] concerned, *i.e.*, the particular test and testing process [they] employed." *Id*. at ___, 131 S. Ct. at 2715. "Nor could such surrogate testimony expose any lapses or lies on [either Agent Shoopman's or Agent

Allcox's] part." *Id.* at ___, 131 S. Ct. at 2715. Agent Schell's status as an expert witness does not allow the State to bypass the Confrontation Clause by simply asking her to read the conclusions of nontestifying witnesses into evidence. Nor has she provided any independent expert opinion—developed through her own analysis—for which the lab reports were a basis. Agent Schell's testimony regarding the nontestifying analysts' conclusions about the substances involved in the 3 March and 6 March 2008 transactions violates defendant's Confrontation Clause rights.

Having determined that the lab reports are testimonial; that Agent Schell did not personally conduct or participate in the testing on the 3 March and 6 March 2008 samples, and the State did not show that the testing analysts were unavailable and that defendant had a prior opportunity to cross-examine; and that Agent Schell offered no independent opinion based on the lab reports, I agree with the majority's ultimate holding that Agent Schell's testimony violates the Confrontation Clause and admission of her opinions was prejudicial error as to the sale or delivery conviction. I therefore concur in the result.

Chief Justice PARKER joins in this concurring opinion.